UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OTIS TIMMONS,

      Petitioner,

v.                        Case No: 5:12-cv-672-Oc-29PRL

SECRETARY,            FLORIDA
DEPARTMENT OF CORRECTIONS
and    FLORIDA    ATTORNEY
GENERAL,

      Respondents.

---

## OPINION AND ORDER

### I. Status

Petitioner Otis Timmons (hereinafter "Petitioner" or "Timmons") initiated this action proceeding *pro se* by filing a timely 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. #1, "Petition") challenging his judgment and conviction of attempted sexually battery while armed and kidnapping while armed entered in the Fifth Judicial Circuit Court in Marion County, Florida. The Petition raises four grounds for relief. See generally Petition.

Respondent[1] filed a Response (Doc. #5, Response) opposing all grounds and attached supporting exhibits (Doc. #6, Exhs. 1-31)

---

[1]Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts provides that applicants in "present

consisting of the record on direct appeal and postconviction pleadings. *Inter alia*, Respondent argues that Petitioner has not satisfied 28 U.S.C. § 2254(d)(1)-(2).[2]   Petitioner filed a Reply (Doc. #8), which also contains exhibits consisting of portions of the trial transcript.

For the reasons that follow, the Court concludes that Petitioner is not entitled to habeas relief and the Petition must be denied.  Because the Petition can be resolved on the basis of the record, an evidentiary hearing is not warranted.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-474 (2007) (finding if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## II. Background and Pertinent Procedural History

On March 23, 2007, Petitioner was charged by Information with attempted sexual battery while armed and kidnapping while armed.

---

custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent."  The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition."  <u>Rumsfield v. Padilla</u>, 542 U.S. 426, 435 (2004).  This is "'the person with the ability to produce the prisoner's body before the habeas court.'"  <u>Id.</u> at 435-436.  In this case, the proper Respondent is the Secretary of the Florida Department of Corrections.  The Florida Attorney General is dismissed from this action.

[2]Respondent notes that the Petition is timely filed.  Response at 5.

Exh. 1, pp. 1-3.  After a two-day jury trial in April 2009, the jury found Petitioner guilty as charged.  In accordance with the verdict, the trial judge sentenced Petitioner to a concurrent thirty-year term of imprisonment in the Florida Department of Corrections and designated him a sexual predator.[3]  Exh. 3. Subsequently, the trial court changed Petitioner' sentence on the attempted sexual battery conviction to a fifteen-year term of imprisonment with a concurrent thirty-year sentence on the armed kidnapping conviction.  Exh. 10, pp. 187-188.

Petitioner, with the assistance of counsel, filed a direct appeal raising one issue for relief: whether the trial court erred by admitting Williams rule evidence when there was no probative value and the evidence solely showed that [Petitioner] had a propensity to commit sex crimes.  Exh. 10, p. 145-146.  After briefing from the State, the appellate court entered an order per curiam affirming the decision.  See Exh. 10, p. 164 (answer brief); Exh. 6 (appellate court order dated November 23, 2010).

Petitioner then filed his first postconviction motion under Florida Rule of Criminal Procedure 3.850.  See Exh. 10, pp. 1-12 (Rule 3.850 motion).  The postconviction court construed the

---

[3] The trial court later entered an order to correct Petitioner's sentence, noting that Petitioner was sentenced as if attempted sexual battery was a first degree felony when it is in fact a second degree felony.  See Exh. 10, pp. 187-190.

motion to also be filed under Florida Rule of Criminal Procedure 3.800 to extent the motion also raised some claims challenging Petitioner's sentence.  After holding an evidentiary hearing, the postconviction court entered an order granting Petitioner's Rule 3.800 motion to the extent the court re-sentenced Petitioner on the attempted sexual battery conviction and corrected the sentencing scoresheet, see Exh. 10, pp. 187-188, but denying Petitioner relief on the other claims.  Exh. 10 at 194-209. Petitioner appealed the postconviction court's decision, but the appellate court *per curiam* affirmed. See Exh. 12 (Petitioner's brief on appeal from order denying his Rule 3.850 motion); Exh. 14 (order *per curiam* affirming).

Petitioner then filed additional postconviction motions. Exh. 16 (Petitioner's petition for writ of mandamus); Exh. 19 (Petitioner's petition for writ of quo warranto); Exh. 21 (Petitioner's state petition for writ of habeas corpus raising ineffective assistance of appellate counsel); Exh. 25 (Petitioner's second Rule 3.850 motion).[4]  The state courts either dismissed or denied Petitioner's motions.  Petitioner initiated the instant federal § 2254 habeas petition on December 14, 2012.

---

[4]The Court will review these postconviction motions and the orders related thereto only to the extent necessary to address Petitioner's claims raised in the instant § 2254 petition.

### III. Applicable § 2254 Law

#### A. Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 246 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792 (2001). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir</u>, 550 U.S. at 246; <u>Penry</u>, 532 U.S. at 792; <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." <u>Id.</u> (internal quotations and citations omitted). <u>See also Harrington</u>

v. Richter, 562 U.S. 86, 102 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, 559 U.S. 43, 47 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions

of the United States Supreme Court at the time the state court issues its decision).  "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted).  The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 562 U.S. at 86.  First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.  Id. (citations omitted).  Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).  The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**B. Federal Claim Must Be Exhausted in State Court**

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)). This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005). "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider. A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion.

Anderson v. Harless, 459 U.S. 4, 7 (1983).  A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ." Smith, 256 F.3d at 1138.  A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).  Second, under exceptional circumstances, a petitioner

may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such a review is necessary to correct a fundamental miscarriage of justice. *House*, 547 U.S. at 536; *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

## C. Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.   Id.   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly

cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

## IV. Findings of Fact and Conclusions of Law

The Petition raises the following four grounds for relief:

**Ground One**- Petitioner's rights were violated under the due process clause to Article I, Section 9 and 16 of the Florida Constitution and the Sixth and Fourteenth Amendments of the United States Constitution because the prosecutor "fraudulently invoked the trial court's subject matter jurisdiction by using insufficient evidence to convict him";

**Ground Two**- Petitioner's rights were violated under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because the prosecutor "failed to prove each and every element of the crimes charged in the information beyond a reasonable doubt."  ;

**Ground Three**- Petitioner's rights were violated under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when his trial counsel rendered ineffective assistance by failing to request a Faison[5] jury instruction on the kidnapping while armed charge;

---

[5]Faison v. State, 399 So. 2d 19 (Fla. 3d DCA 1981).

> **Ground Four**- Petitioner's rights were violated under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court read the jury an erroneous instruction on sexual battery while armed, not attempted sexually battery while armed.

See generally Petition.  Respondent opposes relief on all grounds.

See generally Response.  The Court will address each of Petitioner's claims.  Grounds One and Two are related to the extent they both challenge the sufficiency of the evidence and will be addressed together.

## A. Sufficiency of the evidence

In Ground One, Petitioner contends that he was denied his right to a fair trial because the prosecutor "fraudulently invoked the trial court's subject matter jurisdiction by using insufficient evidence to convict him." Petition at 6.  In Ground Two, Petitioner argues that the prosecutor "failed to prove each and every element of the crimes charged in the information beyond a reasonable doubt." Petition at 8.  Petitioner takes issue with the two convictions, i.e., attempted sexual battery while armed and kidnapping while armed, because they arose out of the "same criminal episode." Id.  Petitioner also challenges the kidnapping while armed conviction, contending that the victim entered the residence with no force or threat.  Id.

In Response, Respondent argues that both grounds are unexhausted and are now procedurally defaulted. With regard to Ground One, Respondent notes that Petitioner raised this claim in a successive, Rule 3.850 motion. Response at 6-8. Respondent points out that that postconviction court specifically dismissed the claim as improperly raised in a successive Rule 3.850 motion. Id. With regard to Ground Two, Respondent argues that the claim is procedurally barred because Petitioner never raised a sufficiency of the evidence claim on direct appeal. Id. Additionally, Respondent notes that the facts supporting this claim were actually raised as ineffective assistance of counsel claims in Petitioner's initial Rule 3.850 motion. Id.

### 1. Exhaustion and Procedural Default

As discussed above, a petitioner who fails to raise his federal claims in the state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause and prejudice, or a fundamental miscarriage of justice. Supra at 7-9. A procedural default can arise in different ways. A claim may be procedurally defaulted when a state court correctly applies a procedural default principle of state law and concluded that the petitioner's federal claims are barred in its order dismissing the petitioner's postconviction claim. Bailey v. Nagle, 172 F.3d 1299, 1302-1303 (11th Cir. 1999). When a state court makes this

determination, the federal court must determine whether the last state court rendering judgment "clearly and expressly" stated that its judgment rested on a procedural bar. Id. Second, a claim may be procedurally defaulted when a petitioner never raised the claim in state court and it is obvious that the unexhausted claim would now be procedurally defaulted in state court. Id. at 1303.

The Court finds both Ground One and Ground Two are procedurally defaulted, but for different reasons. Ground One is procedurally defaulted because the Florida court's order clearly and expressly determined that the claim was procedurally defaulted. Ground Two is procedurally defaulted because Petitioner never raised this claim before the Florida courts.

Turning to Ground One, Respondent is correct that Petitioner raised a claim that mirrors Ground One in a Rule 3.850 motion that the postconviction court deemed "successive." See Exh. 26. In Petitioner's Rule 3.850 motion dated July 25, 2012, he claimed that the prosecutor committed fraud and "fraudulently invoked the trial court's subject matter jurisdiction by allowing insufficient evidence to convict [Petitioner]," as his first claim for relief. See Exh. 25. The postconviction court noted in its order dismissing the claim that Petitioner's July 25, 2012 motion was successive because Petitioner previously filed his initial Rule 3.850 motion on March 21, 2011, and this claim should have and

could have been raised in Petitioner's initial motion.   Exh. 26
at 332.   The order went on to find that any claim of insufficient
evidence was also improperly raised in the Rule 3.850 motion
because it should have been raised on direct appeal and cited to
Florida case law.   Id. (citing Smith v. State, 445 So. 2d 323, 325
(Fla. 1983); Montana v. State, 597 So. 2d 334 (Fla. 1st DCA 1992)).

Here, the Florida court properly applied a procedural default
on Ground One citing to Florida law.   The order clearly and
expressly found the claim was procedurally defaulted and dismissed
the claim accordingly.   See Exh. 26.   Petitioner has not
established cause and prejudice, or a fundamental miscarriage of
justice to overcome the procedural default of Ground One.   Thus,
this Court dismisses Ground One as procedurally defaulted.

Turning to Ground Two, a review of the record confirms that
Petitioner did not raise the same claim sub judice before the
Florida courts.   Significantly, Petitioner never raised a
sufficiency of the evidence claim on direct appeal.   See Exh. 10
at 145.   Instead, the facts supporting Ground Two were raised as
ineffective assistance of counsel claims before the postconviction
court.   See Exh. 10 at 1-14.   Thus, Petitioner did not present the
same federal claim to the state court that he raises here.   Thus,
the Ground Two claim was not properly exhausted before the Florida
courts and would now be procedurally defaulted under Florida law.

See <u>Montana</u>, 597 So. 2d 334; <u>Johnson v. Alabama</u>, 256 F.3d 1156, (11th Cir. 2001) (applying procedural default to sufficiency of the evidence claim that was not raised on direct appeal). Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural default. Thus, Ground Two is also dismissed as procedurally defaulted.

### 2. Merits

Alternatively, Petitioner is denied relief on the merits as to both Grounds One and Two. See 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

In evaluating a sufficiency of the evidence claim, Florida courts assess whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt. <u>Simmons v. State</u>, 934 So. 2d 1100, 1111 (Fla. 2006). This is the same standard as the federal standard for evaluating a due process challenge based on the sufficiency of the evidence. <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-319 (1979); <u>overruled on other grounds</u>, <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a

reasonable doubt.  <u>Jackson</u>, 443 U.S. at 318-319.  It is the duty of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  <u>Id.</u>  The federal court does not substitute its judgment as to whether it believes the evidence to be sufficient to sustain the conviction.  <u>Id.</u>  And, the federal court must look to state law for the substantive elements of the criminal offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause.  <u>Coleman v. Johnson</u>, 566 U.S. ___, ____, 132 S. Ct. 2060, 2064 (2012); <u>Garcia v. Perringer</u>, 878 F.2d 360, 362 (11th Cir. 1989) (citations omitted).

Florida law in effect at the time of Petitioner's trial defined sexual battery while armed as:

> A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury . . . .

<u>See</u> <u>generally</u> Fla. Stat. § 794.011(3).  This statute applied to Petitioner to the extent it was modified by the "attempt" statute set forth at Florida Statute § 777.04.  <u>See</u> App'x Vol. 1 at 001 (Information charging Petitioner under § 794.011(3) and § 777.04); <u>see also</u> <u>Wilcox v. State</u>, 783 So. 2d 1150, 1151 (Fla. 1st DCA 2001)

(explaining generally that the "attempt" statute modifies the sexual battery statute).

Florida law in effect at the time of Petitioner's trial defined kidnapping while armed as:

> The term "kidnapping" means forcibly, secretly, or by threat confiding, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to . . . commit or facilitate commission of any felony.

See generally Fla. Stat. § 787.01.

For federal sufficiency review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (quotations omitted). If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those inferences in favor of the State and against the defendant. Johnson v. Alabama, 256 F.3d 156, 1172 (11th Cir. 2001).

As noted in Petitioner's appellate brief on direct appeal, the victim testified at trial that while she was at a public library using a computer to fill out job applications, Petitioner drove up in a gold, Lincoln car and started flirting with her. See Exh. 4 at 2 (citing T1 21-78); see also App'x Vol. 2 at 20-

78. He asked her if she would like to go to lunch. App'x Vol. 2 at 20-78. She told him she was out looking for employment and he offered her a job at his barbershop. Id. He told her she would have to fill out some paperwork and so she got into his vehicle. Id. He drove her to his house. Id. The victim testified that once he got her inside the house, instead of getting the paperwork, he put a knife to her throat, dragged her to the bedroom by her ankles and tore off her pants and underwear. Id. When she resisted, he became angrier. Id. When he realized that she was having her period, he called her pathetic, told her to get dressed and dropped her off at Albertson's. Id. The victim explained that she put her jeans on, but left her underwear because they were torn.

Officers who investigated the case from the Marion County Sheriff's Office also testified at trial. Id. at 79, 85, 96, 101, 105. David Moorehead testified that he responded to the victim's call, went to her house, and brought her back to the Major Crimes Unit. See id. at 79-81. Marilyn Wagner, a senior forensic crime scene technician, testified that she took digital photographs of the victim (she had scratches and bruises) and took oral swabs to collect DNA. Frank Scala testified that he met with the victim in attempt to locate the house in "the Shores" where the incident occurred. Id. at 96-98. While driving, the victim ended up

identifying the Petitioner as the assailant because they saw him driving his gold-colored Lincoln.  Id. at 98.  Thereafter the victim identified Petitioner's house as the place where the incident occurred.

Detective Peavy also testified and explained to the jury his role in the investigation, including the samples of DNA he took from Petitioner with his consent.  The jury heard Petitioner's recorded statement provided to Detective Peavy wherein Petitioner described his version of the events.  Id. at 122-167.  Petitioner maintained his innocence and explained that the victim and himself "kissed" and "messed around."  Id.

A recorded jail house telephone calls between Petitioner and his brother was also played for the jury.  Id. at 191-197.  During the record telephone call, Petitioner talked about details, such as the detective executing a search warrant to look for the victim's undergarments (described as a "black thong"), which the Petitioner would not have known about, but for being involved in the incident the victim described.  Id. at 191-214.

Florida Department of Law Enforcement Officer James Pollock testified as to the DNA test he conducted on the evidence obtained. Pollock explained that the "touch DNA" taken from the victim's jeans matched Petitioner's DNA on all thirteen markers.  Id. at 224-251.  There was no DNA match from the victim's mouth suggesting

that Petitioner's version of the events that they kissed was not accurate. Id. at 244-45.

A review of the record shows sufficient evidence was presented for a rational trier of fact to find Petitioner guilty of attempted sexual battery with a weapon and kidnapping. The victim's testimony alone would have satisfied the elements of both charges. Therefore, in the alternative, Petitioner is denied relief on Grounds One and Two on the merits.

**B. Ineffective assistance of counsel**

In Ground Three, Petitioner contends that the trial counsel rendered ineffective assistance of counsel because counsel failed to request a "Faison test jury instruction" on the crime kidnapping while armed. Petition at 9. In Response, Respondent refers the Court to the postconviction court's order denying Petitioner relief on this claim. Response at 8-9.

The Court finds Ground Three is exhausted to the extent Petitioner raised this claim as his claim for relief as his tenth ground for relief in his Rule 3.850 motions and appealed the adverse result thereafter. See Exh. 10 at 206; Exh. 12.

In denying Petitioner relief on this claim, the postconviction court reviewed the law set forth in Strickland. Exh. 10 at 195-197. Ultimately, the postconviction court deemed the claim to be without merit, finding as follows:

This claim is more than vague as set forth in the [Timmons'] motion; however, at the evidentiary hearing, [Timmons] explained that his counsel was ineffective for failing to request a Faison jury instruction regarding the kidnap[p]ing charge. He also reasserts his claim of insufficiency of the evidence to support a conviction. (Evidentiary Hearing Transcript, pages 46-48). The instruction suggested by [Timmons] would have required the jury, in order to find kidnap[p]ing, to find that any taking or confinement done to facilitate the commission of the other crime charged (the attempted sexual battery) was not slight, inconsequential and merely incidental to the other crime; and must have some significance independent of the other crime. (Faison, at 21, citing Harkins v. State, 380 So. 2d 524 (Fla. 5th DCA 1980), and State v. Buggs, 547 P.2d 720, 731 (Kan. 1976).

The record reflects that the instruction [Timmmons] argues should have been given in fact was given in this case. The instruction is number 9.1 "Kidnap[p]ing," Standard Jury Instructions in Criminal Cases, which comports with Faison, supra, Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980), and Carron v. State, 414 So. 2d 288 (Fla. 2d DCA 1982). . . . . . .

The insufficiency of the evidence aspect of this claim should have been raised on direct appeal and is not cognizable in a motion for postconviction relief. Johnson v. State, 985 So. 2d 1215 (Fla. 1st DCA 2008).

This claim is without merit.

Exh. 10 at 206-208. The postconviction court continued, "[Timmons] has not shown that counsel's performance was deficient, or that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [Timmons] by the sixth

Amendment.  [Timmons] has not shown that his counsel's performance prejudiced the defense."  Id. at 208.

The Court finds that the Florida court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the Florida court.  Significantly, the postconviction court determined that Petitioner could show neither deficient performance, nor prejudice, under Strickland due to counsel's failure to request the Faison jury instruction on kidnapping because the jury instruction that was read to the jury comported with Faison.  Thus, there was no reasonable basis for defense counsel to ask for the Faison instruction.  See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2006) (concluding that a lawyer "is not ineffective for failure to raise a meritless argument.").  Accordingly, Petitioner is denied relief on Ground Three.

**C. Jury instruction claim**

In Ground Four, Petitioner argues that his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated when the trial court read the jury an "erroneous instruct[ion]."  Petition at 11.  Petitioner contends

that the jury was instructed on the crime of sexual battery with a weapon when he was in fact only charged with "attempted" sexual battery with a weapon.  Id.  In Response, Respondent asserts that this claim concerns the interpretation of Florida's own laws or rules and provides no basis for habeas relief.  Response at 9.

The fact that a jury instruction is allegedly incorrect under state law is not a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules.").  Rather, "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id. (citations omitted).  Where the alleged error is the failure to give an instruction, the burden on the petitioner is especially heavy because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

The Court agrees with Respondent that Ground Four raises a claim grounded on issues of state law and is therefore not cognizable in the instant proceeding.  Estelle, 502 U.S. at 67-72.  To the extent Petitioner intended to raise a federal due process claim, a review of the record containing the jury

instructions reveals no due process violation.  The trial court specifically explained to the jury that Petitioner was accused of the crimes of "**attempted** sexual battery while armed and kidnapping while armed."  App'x Vol. 2 at 378 (emphasis added).  The trial court further went on to explain that "to prove the crime of **attempt** to commit sexual battery while armed, the State must prove the following two elements beyond a reasonable doubt: (1) Otis Timmons did some act toward committing the crime of sexual battery while armed, that went beyond just thinking or talking about it. (2) He would have committed the crime except that someone prevented him from committing the crime of sexual battery while armed or he failed."  Id. at 379 (emphasis added).  Thus, Petitioner's contentions that the trial court did not instruct the jury on "attempted" sexual battery are refuted by the record. Consequently, Ground Four based upon the trial court's jury instruction is either not a cognizable claim for relief, or in the alternative, is denied on the merits as refuted by the record.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Florida Attorney General is **dismissed** from this action.

2.    The Petition for Writ of Habeas Corpus (Doc. #1) **DISMISSED** as to Grounds One, Two, and Four, and alternatively is **DENIED** in its entirety.

3.    The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition.   A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 184 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations omitted).   Petitioner has not made the requisite showing in these circumstances.   Finally, because Petitioner is

not entitled to a certificate of appealability, he is not entitled

to appeal *in forma pauperis*.

     **DONE** and **ORDERED** in Fort Myers, Florida on this   11th   day

of March, 2016.

                               _____

                               JOHN E. STEELE
                               SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record

- 28 -